849 F.2d 609
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joseph GABRIEL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1565.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1988.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This social security case arises out of the Secretary's denial of the plaintiff's application for disability insurance benefits under Title II of the Social Security Act. Plaintiff filed suit in U.S. district court, seeking judicial review under 42 U.S.C. Sec. 405(g), and then moved for summary judgment. A magistrate recommended that the motion be denied. The district court adopted the magistrate's recommendation, denied the plaintiff's motion for summary judgment, and sua sponte dismissed the case without a motion from the Secretary. This appeal followed.
 
 
 2
 The absence of a cross-motion by the Secretary does not necessarily bar the court from entering summary judgment in the Secretary's favor. See C. Wright & A. Miller, Federal Practice and Procedure Sec. 2720, at 33 (1971). In this case we find that substantial evidence supports the Secretary's decision to deny plaintiff's application for benefits, and we shall therefore affirm the district court's judgment.
 
 
 3
 Plaintiff was born on September 15, 1923. He has a high school equivalency diploma. He worked as a painter and glazer for the Chrysler Corporation until January 5, 1982, when he left his job following a work-related injury. He receives a ten-year pension and worker's compensation benefits. He first applied for social security disability benefits in 1982, claiming disability due to back pain, left knee problems, and a need for a cardiac pacemaker. His application was denied, and plaintiff did not appeal the decision to the district court.
 
 
 4
 Plaintiff reapplied for benefits in 1984, alleging disability as of January of 1982 as a result of surgical removal of cartilege from his left knee, disc problems in his lower back, muscle spasms, a heart condition, and mastoid surgery. An administrative law judge applied the doctrine of administrative res judicata and found that there was no good cause to reopen the earlier application. The district court concluded that the Secretary was not bound to assign plaintiff the exertional level assigned him in the prior decision. Plaintiff's knee problem was subject to improvement through therapy, and the district court upheld the ALJ's finding that plaintiff had become able to perform work at the "medium" exertional level, notwithstanding that in the initial administrative proceeding it was determined that he could only work at the "sedentary" level. The district court agreed that the earlier proceeding was not to be reopened.
 
 
 5
 On appeal plaintiff argues that the Secretary's decision was not supported by substantial evidence and that the ALJ incorrectly found that plaintiff's severe impairments did not equal an impairment or combination of impairments listed in Appendix 1, subpart P, regulation 4.
 
 
 6
 A review of plaintiff's medical history reveals that he has been treated for problems relating to his ears, lower back, left knee, and heart. In 1983 plaintiff was hospitalized three times for perforated right tympanic membrane, chronic otitis media, and cholesteotoma of the right ear. He underwent extensive mastoid surgery in July of that year. In 1984 an ear specialist, Dr. DeMoura, diagnosed sensorineural hearing loss and conductive hearing loss. Finding, however, that plaintiff could use a hearing aid, Dr. DeMoura concluded that he was not disabled as a result of his hearing problems.
 
 
 7
 Plaintiff has also been treated for lower back pain. The record suggests that this pain results from injuries sustained either in 1978, in January of 1982, or in October of 1983. In 1983 and 1984 plaintiff was treated for back pain by Dr. Schukraft, who noted a 50-percent restriction in back flexion and extension and discomfort during straight leg raising. Norgesic Forte, a muscle relaxant, was prescribed. Beginning in 1985 plaintiff consulted a chiropractor, Dr. F.M. Vogel, who reported that x-rays showed decreased disc space at L5-S1, probable facet syndrome at L5, and left internal and right external pelvic rotation causing low back instability. Dr. Vogel later reported that plaintiff also had degenerative disc disease at C5.
 
 
 8
 Plaintiff's primary orthopaedic physician was Dr. Schukraft, who first saw him in January of 1982 for complaints of knee pain. In February of that year plaintiff underwent a left medial menisectomy (surgical excision of the knee cartilage). For several months following the surgery he experienced pain and problems in bearing weight on his left leg. His medications at this time included Tylenol # 3, Norgesic Forte, and Tandearol. He received physical therapy treatments for a number of weeks. In August of 1982 plaintiff received a steroid injection to relieve a 50 to 120 degree flexion limitation. In April of 1983 Dr. Schukraft advised plaintiff that he could return to work. The company physician, however, allegedly ordered plaintiff to do no climbing--and no work that did not involve climbing was available. In September of 1983 plaintiff's x-rays revealed only minimal degenerative changes in the knee. Dr. Schukraft gave plaintiff a note authorizing a return to work without any limitations other than climbing and lifting over 30 pounds.
 
 
 9
 As for plaintiff's cardiac problem, he had a permanent pacemaker implanted in May of 1974 because of severe bradycardia after a myocardial infarction. The pacemaker was replaced in 1978. His cardiologist, Dr. J. Beaudoin, wrote in 1985 that although plaintiff "has done relatively well and has had no problem with his pacemaker ... I have no doubt that [he] is totally disabled from any gainful employment." Dr. Beaudoin supplied no test results, clinical examination reports, or any other objective evidence in support of this opinion.
 
 
 10
 In 1984 Dr. M.C. Henry, a physician employed by the Michigan Disability Determination Service, reviewed plaintiff's 1983 and 1984 medical reports and concluded that plaintiff ought to be able to lift up to 50 pounds, frequently lift up to 25 pounds, and stand or walk about 6 hours over an 8-hour day. Dr. R. Bolton arrived at the same conclusion after a review of the same reports in 1985.
 
 
 11
 Plaintiff himself testified in July of 1985 that he could not walk distances, always used his cane when he left the house, could not sit for longer than 30 minutes, had pain in his whole left side and upper chest upon exertion, and generally walked only two to four houselengths per day for exercise. When asked if he did any housework, he replied "very, very little." He gave, as an example, going into the yard to watch his wife work in the garden.
 
 
 12
 A vocational expert testified that plaintiff's past work as a painter at the Chrysler Corporation had required lifting up to 50 pounds and thus required medium exertion. When asked what work a 61-year-old individual with a pacemaker could do if he could sit or stand for six or eight hours, the expert replied that such a person could perform plaintiff's work as a painter.
 
 
 13
 In a decision issued on September 13, 1985, the ALJ found, based on his own observations of plaintiff's demeanor and the objective medical evidence, that plaintiff's testimony was not credible. The ALJ concluded that plaintiff's impairments, individually or in combination, did not prevent him from performing a full range of medium work activity, and that plaintiff's impairments did not equal a grid impairment. The ALJ also concluded that plaintiff retained the residual functional capacity to perform medium work in his past relevant position as an industrial painter. Consequently, the ALJ found that plaintiff was not disabled for purposes of disability insurance benefits.
 
 
 14
 Having reviewed the record and the briefs, we believe that substantial evidence supports the Secretary's decision to deny benefits. The judgment is affirmed.